Bigger, J.
This action is brought by the board of infirmary directors for the purpose of restraining the board of county commissioners from passing a resolution to transfer the sum of $25,000 from the poor fund to the bridge fund and from causing the transfer of said fund. The petition avers that the commissioners are about to pass such a resolution and effect such a transfer of the fund, and that they will do so unless restrained by the order of the court. The petition avers that there is in the treasury of the county to the credit of the poor fund the sum of $35,000 arising from revenues collected under what is- known as the Aiken law, being an act to provide against the evils resulting from the traffic in intoxicating liquors; that such surplus is not needed for the support and maintenance of the infirmary and *348 the care of the poor of Franklin county; that by reason of high water and floods in the spring of 1907 certain damages were done to bridges • and their approaches which make repairs necessary and that there is not sufficient money in the bridge fund of this county nor in process of collection to make the repairs necessary; that part of the repairs have been made and paid for out of the bridge funds on account thereof. It is stated that the county commissioners have notified the infirmary directors that they are about to transfer the sum of $25,000 from the poor fund to the bridge fund for the purpose of avoiding the issuing of bonds.
This petition is demurred to by the county commissioners, and the case is submitted upon this demurrer. The infirmary directors contend that by virtue of the provisions of Section 964, Revised Statutes, they are invested with the exclusive control of the poor fund. That section provides that the board of infirmary directors shall on the first Monday of March, annually certify to the county auditor the amount of money they will need for the support of the infirmary for the ensuing year, including the amount for all needful repairs at the infirmary, and the county auditor shall place the amount so certified by the infirmary directors on the tax duplicate of the county, and said infirmary directors shall have full control of said poor fund and shall be held responsible therefor.
Section 876, Revised Statutes, confers power upon the county commissioners in their discretion to transfer unexpended balances from one fund to another. That section reads as follows:
“The county commissioners shall have the power to transfer any unexpended balances of any funds raised for the purpose of erecting buildings, remaining in the treasury of their respective counties, to another fund, or to any other purpose for which the money is needed by such county; and in case there is a fund in such treasury that has been levied and collected for. a special purpose, and such fund, or part thereof, will not be needed for such purpose until after the time fixed for the- next payment of taxes, and any of the other funds of the county are exhausted, the commissioners may transfer such special fund or such part thereof as is needed temporarily to such other fund as is exhausted and reimburse such special fund out of the taxes levied for such other fund as soon as the same are collected. ’ ’
*349 Section 4364-17 provides that the revenues and fees resulting under the provisions of this act shall be distributed -as follows, to-wit: Then come provisions with reference to the application of eight-tenths of the revenue thus raised, and concluding as follows: “And the remaining two-tenths part thereof together with all other revenues resulting hereunder in said county shall be passed to the credit of the poor fund of said county.”
Section 2834cZ provides that whenever there is in the treasury of any county any surplus arising under an act entitled, “An act providing ■ against the evils resulting from the traffic in intoxicating liquors,” passed May 14, 1886 (83 O. L.), which surplus is not needed for the purposes' named in Section 9 of said act, such surplus may be at any time transferred to another fund by the order of the proper authorities entered on their minutes.
Section 9 of the act here referred to is Section 4364-17, Revised Statutes.
It is manifest from the provisions of this Section 2834d that the Legislature contemplated a probable surplus in the poor fund under the provisions of the law which gives one-fifth of the revenue derived under the Aiken law to the poor fund. The Legislature has therein provided that in such case this surplus may be transferred to another fund by the order of the proper authorities. The question to be determined is who are the proper authorities to exercise this power? It is the contention of the county commissioners that' by virtue of the general powers conferred upon them with reference to transfer of moneys from one fund to another by Section 876 they are empowered to make the transfer of this surplus and that the words “proper authorities” in Section 2834cZ refer to the board of county commissioners.
The infirmary directors on the other hand contend that, by virtue of the provisions of Section 964, they are clothed with the exclusive control over the entire poor fund, and that the board o'f county, commissioners have no authority or control over any portion of it, and are without authority to transfer any portion of it to any other fund. '
In the light of these statutory provisions I am of the opinion *350 that the county commissioners are given the power in their discretion to transfer such surplus- in the poor fund resulting from the collection of taxes imposed under the Aiken law.
In the first place it is to be observed that the fund over which the infirmary directors are given full control by Section 964 is a'fund raised by taxes levied upon the general duplicate of the county and in such sum- as the infirmary directors themselves shall certify to the county auditor to be sufficient for the support of the infirmary for the ensuing year, including the amount for all needful repairs at the infirmary. The statute provides they shall have full control over said poor fund. It is manifest that it was the legislative intention in passing this act to give the infirmary directors full control over such a fund as is necessary for the support of the infirmary, which sum they are required to certify to the county auditor. The petition states that the surplus of $35,000 or more resulting from the Aiken law revenue is not necessary for the support of the infirmary. The infirmary directors are not given control over any other or greater sum by this statute than that which they may thus determine to be sufficient for the needs of the infirmary. It is not stated in the petition that this sum, which the county commissioners are about to transfer, is any part of a sum found and determined by them to be necessary for the support of the infirmary for the current year, but on the contrary the petition states that it is not necessary.
In the next place Section 876 is broad enough in its terms to confer power upon the board of county commissioners to transfer this surplus. The language is- “And in case there is a fund in said treasury that has been levied and collected for a special purpose and such fund or part thereof will not be needed for such purpose until after the time fixed for the next payment of taxes and any of the other funds of the county are exhausted the commissioners may transfer such fund,” etc. No such general power is conferred upon the infirmary directors with reference to transferring money from one county fund to another. Indeed, I find no statutory ground ° of authority to any board to transfer funds under its control to another fund not under its control, and it seems to me from the very nature *351 of things such exercise of power was not contemplated by the Legislature.
There is no statute which empowers the infirmary directors in their discretion to transfer moneys from one fund to another. It is true that Section 225-2 in an enumeration of certain boards which are authorized to transfer moneys from one fund to another does include the infirmary directors, but this is not a discretionary power conferred upon these boards under that act, but only authorizes such boards to petition the court for authority to make the transfer and upon a hearing the court may grant or refuse the prayer of the petition. But it is apparent also from the language of Section 225-3 that the Legislature only contemplated such transfers from one fund to another fimd, both of which are under the control of the same board. Section 225-3 provides:
“Whenever a majority of the officers or of the members in any board aforesaid named desire to transfer any fund to another fund or to a new fund to be created under their respective supervision,” etc.
That is it is only the transfer from one fund to another fund under their respective supervision that is here authorized, and this lends color to the view that the Legislature never contemplated the transfer by a board from one fund under its control to a fund under the control of some other board. The board of infirmary directors, not having any supervision or control over the other funds of ■ the county, are not in a posh tion to determine the necessities of such other funds, and it is not reasonable to suppose that the Legislature in providing for the transfer of a surplus arising under the Aiken law by the proper authorities intended that power to be exercised by a board not in a position to determine the necessities or expediency of transferring moneys from one county fund to another. It may be that the infirmary directors are clothed with full control over such a fund as it may determine to be necessary for the support of the infirmary for the ensuing year, including the amount for all needful repairs,, whether such sum be raised by a tax levied upon the general duplicate of the county or derived from the revenue under the Aiken law., but *352 in my opinion they are not given exclusive control over a fund in excess of such needs and requirements.
Karl T. Webber, for plaintiff.
R. W. McCoy, for defendant.
It is to be noted that the county commissioners are clothed with power to incur extraordinary expenses with reference to the county infirmary and support of the poor, as in the building of infirmary buildings, by Section 859; and to purchase land for its use by Section 870; and to borrow money for the support of the poor in emergencies, etc., in Section 871; and to rebuild infirmary buildings destroyed, under Section 871-1; or to provide temporary structures in lieu of those condemned, under Section 871-2; while the expenditures of the infirmary directors are confined to the ordinary and usual expenses of maintenance and repair, which is an additional consideration leading to the conclusion that it was not the legislative intention to give the infirmary directors control over any sum in excess of that needful for such ordinary and usual expenses.
I conclude, therefore, that the board of county commissioners will not exceed their authority, or infringe upon the powers conferred upon the infirmary directors by statute, when they proceed to transfer the fund here in question to the bridge fund of the county, and for that reason the petition does not state facts sufficient to entitle the plaintiff to the relief prayed for.
The demurrer is therefore sustained.